**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 25-2023

AFFACHAO ABDON SAMEY,

Petitioner - Appellant,

v.

GRACE AGUEGUE; STEPHANO ADOUKONOU; FRANCOISE GAMBE,

Respondents - Appellees.

Appeal from the United States District Court for the District of South Carolina, at Rock Hill.  Shiva Vafai Hodges, Magistrate Judge.  (0:24-cv-05845-SVH)

Argued:  January 27, 2026                    Decided:  April 1, 2026

Before QUATTLEBAUM, HEYTENS, and BERNER, Circuit Judges.

Affirmed by unpublished opinion. Judge Quattlebaum wrote the opinion, in which Judge Heytens and Judge Berner joined.

**ARGUED:** Scott Douglas MacLatchie, Jr., Matthew Adams Abee, NELSON MULLINS RILEY & SCARBOROUGH LLP, Columbia, South Carolina, for Appellant.  Matthew B. Garry, MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C., New York, New York, for Appellees.  **ON BRIEF:** Connor T. Jasso, Harrison P. Williams, NELSON MULLINS RILEY & SCARBOROUGH LLP, Columbia, South Carolina, for Appellant. Karen R. King, MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C., New York, New York, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

QUATTLEBAUM, Circuit Judge:

Affachao Abdon Samey petitioned in the district court for the return of his child to France under the Hague Convention on the Civil Aspects of International Child Abduction and the International Child Abduction Remedies Act, 22 U.S.C. §§ 9001–11. He claimed that relatives of the child's mother—respondents Grâce Aguégué, Stéphano Adoukonou and Françoise Gambe—wrongfully retained his daughter in the United States. After a bench trial, the district court denied the petition. Samey now appeals. Finding no reversible error, we affirm.

## I.

### A.

The Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11670 (Convention), "was adopted in 1980 in response to the problem of international child abductions during domestic disputes," *Golan v. Saada*, 596 U.S. 666, 670 (2022) (quoting *Abbott v. Abbott*, 560 U.S. 1, 8 (2010)). Both the United States and France are parties to the Convention. And Congress has codified procedures for implementing it.

The Convention is premised on the notion that a child's interests are best served when custody decisions are made in their country of "habitual residence." *Id.* (quoting *Monasky v. Taglieri*, 589 U.S. 68, 72 (2020)); Convention, pmbl. To effectuate this goal, "the Convention generally requires the 'prompt return' of a child to the child's country of habitual residence when the child has been wrongfully removed to or retained in another country." *Golan*, 596 U.S. at 670 (quoting Convention, art. 1; citing *id.*, art. 12). And in

3

this way, the Convention fixes the venue for custody battles—it does not provide a framework for adjudicating "the merits of any underlying child custody claims." *See* § 9001(b)(4); *see also* Convention, art. 19.

When a person claims "that a child has been removed or retained in breach of custody rights," that person may apply "for assistance in securing the return of the child." Convention, art. 8. In the United States, this application takes the form of a civil petition filed in state or federal court. § 9003(a)–(b). To succeed, a petitioner "shall establish by a preponderance of the evidence . . . that the child has been wrongfully removed or retained within the meaning of the Convention." *Id.* § 9003(e)(1)(A).

> The Convention provides that removal or retention is wrongful where:
>
> *a*      it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and
>
> *b*      at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

Convention, art. 3. American courts have distilled a petitioner's claim for wrongful removal or retention into three elements. *See, e.g.*, *Miller v. Miller*, 240 F.3d 392, 398 (4th Cir. 2001). Mapped onto Samey's claim here, he was required to show his daughter was habitually resident in France at the time of her retention in the United States, her retention was in violation of his custody rights under French law and he was exercising those rights at the time of retention. *See id.*

4

When a district court determines that a child has been wrongfully removed or retained away "from the child's country of habitual residence, the court ordinarily must order the child's return." *Golan*, 596 U.S. at 669. For instance, "[w]here a child has been wrongfully removed or retained" under Article 3 and less than one year has elapsed between "the commencement of proceedings" and "the date of the wrongful removal or retention," the district court "shall order the return of the child forthwith." Convention, art. 12; *see also* § 9003(b), (d).

But there are exceptions to this rule. *Golan*, 596 U.S. at 669. Relevant here, if more than a year has passed, the district court does not have to order return if "it is demonstrated that the child is now settled in its new environment." Convention, art. 12. This is known as the well-settled defense, and a respondent bears the burden of proving it by a preponderance of the evidence. § 9003(e)(2)(B). In addition, under Article 13b, the district court "is not bound to order the return of the child" if a respondent establishes "a grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation." Convention, art. 13. A respondent asserting this grave-risk defense must prove it by clear and convincing evidence. § 9003(e)(2)(A). Nevertheless, Articles 12 and 13 "do not limit the power of" the district court "to order the return of the child at any time." Convention, art. 18.

## B.

Prisca Aguégué and Samey, a French citizen, had a daughter together in Cotonou, Benin—a small country on the West African coast—in 2016. They married a couple of years later. Shortly after that, they all left Benin to live in France.

5

A few years later, Prisca was diagnosed with leukemia. She was treated at a hospital in Paris, and Samey spent time with her at the hospital most days. For a while, neighbors and friends helped care for their young child. But eventually, Samey and Prisca agreed for the child to travel over the summer to Lancaster, South Carolina, to spend time with Grâce Aguégué (Prisca's sister and the child's aunt), Stéphano Adoukonou (Prisca's brother-in-law and the child's uncle) and Françoise Gambe (Prisca's mother and the child's grandmother).

On June 28, 2022, the child flew to the United States to be with her relatives in Lancaster. She continues to live with those relatives in Lancaster today. Unfortunately, Prisca died from leukemia in September 2023. Samey claims that he tried to arrange for the child's return before and after Prisca's death. He also claims respondents resisted these efforts, requiring him to submit a request to French authorities under the Hague Convention on October 27, 2023, for his daughter's return. Respondents dispute these claims.

On October 14, 2024, Samey petitioned the district court under the Convention and § 9003(b) for his daughter's return to France, alleging wrongful retention in South Carolina by respondents. Respondents asserted various affirmative defenses, including the well-settled and grave-risk defenses. The district court held a two-day bench trial. Afterwards, the district court issued findings of fact and conclusions of law. It held that Samey had not met his burden of establishing wrongful retention. The district court also held that respondents satisfied their burden of proving the well-settled and grave-risk affirmative

6

defenses. Last, the district court declined to exercise its discretion to return the child to France. Samey timely appealed, challenging each of the district court's conclusions.[1]

## II.

## A.

In a Hague Convention case, we review the district court's findings of fact for clear error and its legal conclusions de novo. *See Monasky*, 589 U.S. at 83; *see also Maxwell v. Maxwell*, 588 F.3d 245, 250 (4th Cir. 2009). A factual "finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Tekmen v. Reliance Standard Life Ins. Co.*, 55 F.4th 951, 964 (4th Cir. 2022) (quoting *Wall v. Rasnick*, 42 F.4th 214, 220 (4th Cir. 2022)).

## B.

Samey raises several challenges to the district court's conclusion that he did not prove wrongful retention. But even assuming error on the part of the district court on this issue, the district court also held that respondents had established the grave-risk defense. And because we find no reversible error in that conclusion, we affirm.[2]

The district court found respondents had proved that if returned to France, there was a grave risk the child would be abused. Samey vigorously challenges that finding. He points

---

[1] The district court had jurisdiction over Samey's petition. 22 U.S.C. § 9003(a); 28 U.S.C. § 1331. The magistrate judge had jurisdiction to resolve this dispute upon consent of the parties. 28 U.S.C. § 636(c)(1). We have jurisdiction under 28 U.S.C. § 1291.

[2] Because we affirm the district court's grave-risk conclusion, we do not consider its discussion of the well-settled defense.

to evidence that respondents manufactured allegations of abuse against him. He also argues that the district court erred in crediting a forensic interview of his daughter during which she described the alleged abuse. But there was also evidence supporting the district court's conclusion—that the allegations were not made up and that the forensic interview was credible. So, applying our clear error standard of review, we are not left with the definite and firm conviction that a mistake has been committed. Thus, on this record, the district court did not clearly err in finding the child faced a grave risk of harm if she were returned to France.

In addition, Samey argues the district court erred by not considering two arguments—that French authorities could protect his daughter and that the family's friends in France could watch the child until French custody proceedings concluded—when making its grave-risk finding. But the district court considered the adequacy of French law enforcement and concluded this fact did not change its calculus given the evidence of abuse in the record. And though the district court did not mention the testimony that friends in France could care for the child, we do not require district courts to explicitly recite the entire record when rendering a decision. *See Platt v. Mansfield*, 162 F.4th 430, 441 (4th Cir. 2025) (recognizing district court need not "explicitly address" every issue).

Here, because the district court found credible evidence of sexual and physical abuse and rejected the argument that the availability of French law enforcement sufficiently mitigated the risk posed by this abuse, the district court did not err when it did not explicitly address the related argument—that the availability of family friends in France lessened the danger posed by abuse. *Cf. Golan*, 596 U.S. at 680 (noting that sexual and physical abuse

8

constitute "intolerable situation[s]" and "obvious grave risk[s]" to a "child's safety that c[an] not readily be ameliorated").

Though our deferential standard of review compels this conclusion, Hague Convention proceedings are solely determinations of venue. Accordingly, any findings, including a finding of grave risk, "shall not be taken to be a determination on the merits of any custody issue." *See* Convention, art. 19.

## C.

Finally, Samey claims the district court should have ordered the child's return to France anyway. Recall that Article 18 "do[es] not limit the power of" the district court "to order the return of the child at any time." *Id.*, art. 18. Indeed, "courts retain the discretion to order return even if one of the exceptions is proven." *Miller*, 240 F.3d at 402 (quoting *Feder v. Evans-Feder*, 63 F.3d 217, 226 (3d Cir. 1995)). In considering this issue, the district court examined several equitable factors, including the child's interest in returning to France, the child's need for contact with Samey and whether respondents acted inequitably. The district court discussed evidence and argument from both sides before concluding that the child should not be returned to France. Given that record, the district court did not err in refusing to order discretionary return of the child under Article 18.

## III.

For the foregoing reasons, the district court's order is,

*AFFIRMED.*

9